# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 18-1602V

| | | |
|---|---|---|
| ANDRES NIEVES, | * | Chief Special Master Corcoran |
| Petitioner, | * | Filed: October 2, 2023 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |

*Michael Adly Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for Petitioner.

*Ryan Daniel Pyles,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On October 17, 2018, Andres Nieves filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petition (ECF No. 1) ("Pet."). Petitioner alleged that he suffered Guillain-Barré syndrome ("GBS") as a result of the influenza ("flu") vaccine he received on October 28, 2015. Pet. at 1. After Respondent's Rule 4(c) Report, I determined that the record could not support a Table flu-GBS claim, since Petitioner had actually been diagnosed with chronic inflammatory demyelinating polyneuropathy ("CIDP"). *See* Order, dated Jan. 11, 2021 (ECF No. 42). However, I observed that the Petitioner might be able to substantiate a causation-in-fact claim based on the CIDP diagnosis.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

The parties were subsequently ordered to brief the causation claim that Petitioner's CIDP was vaccine-caused. After reviewing the overall record and the briefs, I issued a decision denying entitlement on April 17, 2023. *See* Decision, dated Apr. 17, 2023 (ECF No. 105) ("Decision"). Petitioner moved for review of my decision (ECF No. 106), but the motion was denied on September 6, 2023. ECF No. 118.

This is the final fees request for this case. Petitioner previously requested an interim award of attorney's fees and costs in October 2022, and was granted $97,622.50 (with any decision on costs associated with medical literature and medical record retrieval costs, plus the work of three experts, deferred until the case's completion). Decision—Interim Attorney's Fees and Costs, dated Nov. 8, 2022 (ECF No. 97) ("Interim Fees Decision"). A second such motion was interposed on May 28, 2023 (ECF No. 111)—but prior to its resolution, Petitioner filed the present motion, indicating that this new filing should supersede the pending interim request. *See* Motion, dated Sept. 13, 2023 (ECF No. 122) ("Final Fees Mot.").

Petitioner now specifically requests a total of $208,508.04 ($57,211.40 in attorney's fees and $151,296.64 in costs) for the work of his attorney, Michael Baseluos, plus additional counsel.[3] Final Fees Mot. at 13–14. The requested costs include those previously sought in the interim request from 2022. The fees requested all pertain to work performed on the matter after October 27, 2022. Final Fees Mot. at 1–2. Respondent reacted to the fees request on September 25, 2023. *See* Response, dated Sept. 25, 2023 (ECF No. 123) ("Resp."). Respondent defers the calculation of the amount to be awarded to my discretion and has not otherwise taken a position on the appropriateness of a final award. *Id.* at 2–3. Petitioner did not file a Reply.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$181,623.05.**

## ANALYSIS

### I. Petitioner's Claim has Reasonable Basis

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not

---

[3] Petitioner obtained assistance from another Program attorney, Curtis Webb, in preparing the Motion for Review. Mr. Webb's billing invoice for the work he provided has been incorporated into the present motion.

2

*automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or denied entirely. Cases that are unresolved and/or pending must be evaluated for reasonable basis, because the claim's success remains to be determined.

A claim's reasonable basis[4] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[5]

Here, although Petitioner's claim was ultimately unsuccessful, I find it possessed sufficient objective basis to entitle him to a fees and costs award. The claim offered a reasonably-sound medical concept to support the causation theories, and Petitioner's good faith arguments were backed by objective medical record evidence. There were numerous, reasonable fact disputes between the parties, and much evidence in the record supporting Petitioner's arguments. Accordingly, a final award of fees and costs in this matter is appropriate.

---

[4] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

[5] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

**II.     Calculation of Fees**

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method - "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for his attorney, based on the years work was performed:

|  | **2022** | **2023** |
|---|---|---|
| **Michael Baseluos (Baseluos Law Firm)** | $375.00 | $400.00 |
| **Curtis Webb (Curtis R. Webb, Chartered)** | $497.50 | $524.00 |

ECF Nos. 122-1 at 1–7; 122-11 at 1–3.

Mr. Baseluos, who works from San Antonio, TX, has been recognized to practice in-forum, entitling him to rates commensurate with those established in *McCulloch*. *See Dorso v. Sec'y of Health & Hum. Servs.*, No. 19-699V, 2022 WL 4518394, at *2 (Fed. Cl. Spec. Mstr. Sept. 13, 2022). The requested rates are also consistent with what has previously been awarded for his work, in accordance with the Office of Special Masters' fee schedule.[6] *See Bristow v. Sec'y of Health &*

---

[6] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Oct. 2, 2023).

4

*Hum. Servs.*, No. 19-457V, 2023 WL 5786346, at *2 (Fed. Cl. Spec. Mstr. July 27, 2023). Although counsel requested his appropriate rate for time worked in 2022, the submitted invoice appears to calculate his total hours worked at his requested 2023 rate. Thus, I find it necessary to adjust the requested fees figure to reflect the appropriate rates for the respective years worked—resulting in a **reduction of $162.50**.

Otherwise, I deem the time Mr. Baseluos devoted to the matter reasonable (even if it has been my judgment at certain times in this claim's life that attorney work sometimes veered into unnecessary matters). *See e.g.*, June 28, 2022 Scheduling Order (ECF No. 87) at 2–3. I will therefore award all fees requested for Mr. Baseluos's work without adjustment.

Mr. Webb has also been recognized to practice in forum, entitling him to rates established in *McCulloch*. *See Rowan v. Sec'y of Health & Hum. Servs.*, No. 17-760V, 2020 WL 7869436 (Fed. Cl. Spec. Mstr. Nov. 17, 2020). The 2022 requested rate is consistent with what has previously been awarded for his work, in accordance with the Office of Special Masters' fee schedule.[7] I also deem the 2023 rate reasonable, given his experience in the Program. *See Anklam v. Sec'y of Health & Hum. Servs.*, No. 17-2061V, 2020 WL 4049310, at *2 (Fed. Cl. Spec. Mstr. June 25, 2020). His rates are therefore adopted—and because time devoted to the matter by Mr. Webb was also reasonably spent, it shall also be awarded in full.

### III. Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $151,296.64 in outstanding costs, including the filing fee, a Dorland's Medical Dictionary subscription fee, medical literature and medical record retrieval costs, mailing costs, and costs associated with the work of three experts—Omid Akbari, Ph.D; Joseph Jere, M.D.; and Marcel Kinsbourne, M.D. ECF No. 122 7–11. The filing fee, medical literature and medical record retrieval costs, and mailing costs are reasonable and typical in Program cases. Thus, they shall be awarded in full without reduction. Petitioner's request for reimbursement for his Dorland's Medical Dictionary subscription, however, is not properly charged to the Program, but instead

---

[7] *Id.*

5

reflects an office administrative expense, and thus, will not be awarded, resulting in a **reduction of $4.99**.

The costs to be awarded to each expert shall vary, based on differences in the nature of the opinions provided and other considerations. Dr. Jeret authored three expert reports (ECF Nos. 53-2, 72-1, 88-1), billing $22,962.50 in total for 41.75 hours at a rate of $550.00 per hour, with a retainer fee of $2,500.00. ECF No. 122-8 at 1. But Dr. Jeret has previously been awarded an hourly rate of $500.00 in prior cases, and this rate is more appropriate for the work performed in this matter. *See Bristow*, 2022 WL 17821111 at *6 (Fed. Cl. Spec. Mstr. Nov 15, 20220) (reducing Dr. Jeret's requested hourly rate from $550/hour to $500/hour). Thus, Dr. Jeret's hourly rate is reduced to $500.00, resulting in a **reduction of $2,087.50** (I make no adjustments to the amount of time devoted to the preparation of these reports).

Dr. Kinsbourne authored three expert reports (ECF Nos. 23-2, 31-3, 55-1), billing $37,450.00 in total for 74.9 hours at a rate of $500.00 per hour, with a retainer fee of $2,000.00. ECF No. 122-9 at 5. This rate is consistent with what Dr. Kinsbourne has routinely been awarded for his work in the Program. *See Fulling v. Sec'y of Health & Hum. Servs.*, No. 18-1549V, 2022 WL 3023505 (Fed. Cl. Spec. Mstr. July 11, 2022); *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1630V, 2022 WL 702160 (Fed. Cl. Spec. Mstr. Feb. 8, 2022). I find the hours expended generally reasonable, and therefore, the costs associated with his work will be paid in full. (I note, however, that there was duplication of effort between what Drs. Kinsbourne and Jeret provided. Both are neurologists, and it is not evident to me that their combined efforts were necessary in this case. Counsel is warned that I will more closely scrutinize circumstances in the future in which comparable experts charge, in total, sums equivalent to what is sought herein for essentially overlapping reports).

Finally, there are the charges associated with Dr. Akbari. He authored two expert reports (ECF Nos. 54-2, 88-2), billing $90,310.00 in total for 164.2 hours at a rate of $550.00 per hour, with a retainer fee of $5,000.00. ECF No. 122-6 at 8. This is substantially more than the combined cost of Drs. Kinsbourne and Jeret. And although I have no specific issues with the quality of his reports, the case ultimately did not turn on the first causation prong, limiting the value of an immunologist.

Accordingly, *some* reductions to Dr. Akbari's requested costs are in order. The first relates to his hourly rate. Dr. Akbari has been consistently awarded a $500.00 per hour rate by special masters in the Program. *See Sara v. Sec'y of health & Hum. Servs.*, No. 20-1143V, 2023 WL 3966449, at *5 (Fed. Cl. Spec. Mstr. June 12, 2023) (discussing Program cases in which Dr. Akbari has been awarded $500 per hour). I find this to be an appropriate hourly rate in this case as well. (I will, however, be amenable to considering increases in the rate in future cases). Thus, Dr.

6

Akbari's hourly rate is reduced to $500.00, resulting in a **reduction of $8,210.00** (before consideration of the total hours spent on the matter).

Second, and of greater concern, is the amount of work Dr. Akbari devoted to this case. In short—it was largely unnecessary. Dr. Akbari provided two expert reports in the matter, billing 164.2 hours, an excessive amount of time for a case that did not go to hearing. Under such circumstances, an across-the-board reduction (a step that special masters are permitted to take in their discretion) is appropriate. *See Humphries v. Sec'y of Health & Hum. Servs.*, No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec. Mstr. Oct. 26, 2021). I will apply a twenty percent total reduction to Dr. Akbari's time as a fair sanction for overbilling in the matter, resulting in an additional **reduction of $16,420.00**. I caution Dr. Akbari and counsel to endeavor to employ better billing practices in the future.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of an interim fees award, I **GRANT** Petitioner's Motion for and Interim Award of Attorney's Fees and Costs, awarding **$181,623.05,** reflecting $57,048.90 in attorney's fees and $124,574.15 in costs, in the form of a check made jointly payable to Petitioner and his attorney Mr. Michael Baseluos.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[8]

**IT IS SO ORDERED.**

> s/ Brian H. Corcoran
> Brian H. Corcoran
> Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.